UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| JAMIY R. WESTERN,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL NO. 5:16-CV-474-KKC<br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Jamiy R. Western (DE 10) and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (DE 12). Western brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI"), as provided under Title XVI of the Social Security Act. The Court, having reviewed the record, will affirm the Commissioner's decision.

**I. Overview of the Process**

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

    *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. Factual and Procedural Background

### A. Factual Background

Plaintiff Jamiy Western was born in 1970. (Administrative Record ("AR") 76). She lives with her mother and two daughters in Georgetown, Kentucky. (AR 76-77). She has a GED and has completed most of the requirements for an Associate's degree in photography. (AR

78-79). Prior to her alleged disability, Western worked in medical billing and as a receptionist. (AR 83-84).

Western applied for Disability Insurance Benefits and Supplemental Social Security Income on July 21, 2011 alleging a disability onset date of May 7, 2002. (AR 256-264). Western claimed that she was unable to work due to degenerative disc disease, back injury, arthritis, depression, and spinal stenosis. (AR 299). Western's application was denied initially and on reconsideration in 2012. (AR 119-120). Western then made a timely request for a hearing by an Administrative Law Judge ("ALJ"). (AR 171-73). Western's first hearing was held on October 8, 2013, (AR 33-66) and the ALJ, Karen R. Jackson, issued a written decision on December 16, 2013 denying her claim. (AR 138-48). At that time, Western was represented by Theresa C. Gilbert. The ALJ's decision was reversed by the Appeals Council because the vocational expert ("VE") testified that Western could perform jobs involving moderate or loud noise levels, which exceeded her residual functional capacity ("RFC"). The case was reheard by the ALJ on June 25, 2015. (AR 67-108). Prior to the rehearing, Western's attorney, withdrew. (AR 255). Western attended the rehearing via video teleconference, accompanied by her mother, and testified on her own behalf. (AR 67). Western waived her right to counsel (AR 70). Linda Taber, an impartial VE, also appeared and testified. (AR 67). The ALJ issued a second written decision on September 24, 2015 which again denied Western's claim for benefits. (AR 17-26). Western now appeals that decision to this Court.

B. *The Administrative Decision*

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R. § 404.1520, and found that Western's claim failed at step five. At step one, the ALJ found that Western had not engaged in substantial gainful activity since July 21, 2011, the application date. (AR 19). At step two, the ALJ found that Western had the following severe impairments:

> Degenerative disc disease and stenosis, lumbar spine, status-post fusion, L5-S1; status-post cervical fusion secondary to stenosis and myelopathy; asthma; recurrent/chronic diverticulitis, status-post laparoscopic sigmoid colectomy; asthma; obesity; mild sensorineural hearing loss; major depressive disorder; panic disorder/post traumatic stress disorder (PTSD)/generalized anxiety disorder; pain disorder.

(AR 19). At step three, the ALJ found that Western's impairment, or combination therefore, did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. Next, the ALJ found that Western retained, based on all of her impairments, the RCF:

> to perform less than the full range of light work within these parameters: lift or carry 20 pounds occasionally, ten pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; frequently climb ramps/stairs, never climb ladders, ropes or scaffolds; occasionally stooping, kneeling, crouching, or crawling; no more than frequent use of bilateral upper extremities for reaching overhead; avoid vibration and hazards such as unprotected heights or dangerous machinery; avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; simple routine work tasks; can maintain attention and concentration for two-hour segments during an eight-hour workday; able to adapt to gradual changes in a routine work environment; interact frequently with supervisors and coworkers sufficiently, with occasional interaction with general public; moderate noise intensity level.

(AR 21-22). At step four, the ALJ found Western was unable to perform any past relevant work. (AR 24). Finally, at step five, the ALJ considered Western's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, and found that there existed a significant number of jobs in the national economy that she could perform. More specifically, the ALJ found that Western could work as an order caller or gatekeeper. (AR 25). Accordingly, the ALJ found that Western was not disabled between July 21, 2011 and September 24, 2015. (AR 26).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Western's request for review. (AR 1-7); *see* 20 C.F.R. § 422.210(a). Western has exhausted her administrative remedies and filed a timely appeal

in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

**III. Standard of Review**

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

**IV. Analysis**

Western primarily challenges ALJ's assessment of her RFC. More specifically, she claims that the ALJ erred in weighing the medical source opinions and failed to properly consider her obesity. She also argues that the ALJ failed to fulfil her heightened duty to Western as an unrepresented claimant. These arguments are addressed below.

*A. Dr. Hunt's Opinion*

Western first argues that the ALJ failed to properly evaluate the opinion of her treating surgeon, Dr. Travis A. Hunt. Following Western's neck surgery, Dr. Hunt provided an

5

assessment of her physical limitations which were more restrictive than the ALJ's ultimate RFC determination. (AR 685-90).

The Social Security regulations recognize three types of medical sources: nonexamining sources, nontreating (but examining) sources, and treating sources. 20 C.F.R. § 404.1527; *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Under the "Treating-Source Rule," the opinion of a treating physician is generally entitled to the most weight. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 273 (6th Cir. 2015). If a treating source is not given controlling weight, the ALJ is procedurally required to give "good reasons" for discounting the opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). When considering non-controlling sources, the ALJ must evaluate the following factors in deciding the appropriate weight due: whether the source examined the claimant; the length, frequency, nature, and extent of the treatment relationship; the explanation and supporting evidence presented by the source; consistency of the opinion with the record; specialization; and other factors which support or contradict the opinion. 20 C.F.R. § 404.1527(c).

The ALJ assigned Dr. Hunt's opinion some weight. (AR 24). The ALJ gave good reasons for discounting Dr. Hunt's opinion. First, the ALJ noted that Dr. Hunt's statements were "inconsistent with [the] ability to perform even unskilled sedentary work in an ordinary work setting on a regular and continuing basis." (AR 24). The ALJ then found that "the evidence does not support such severe restrictions—and these are inconsistent with the doctor's progress notes." (AR 24). In December 2011, Dr. Hunt found that Western had full (5/5) strength and intact sensation. (AR 591). In January 2012, Dr. Hunt made similar findings that she had good strength in her legs and walked with a normal gait. (AR 524). In June 2012, Dr. Hunt reported good strength with no significant weaknesses. (AR 691). A month

6

later, he reported that she had full (5/5) strength in her arms. (AR 692). And in December 2012, Dr. Hunt found that Western's strength was improving, that she had less long tract findings, and that, overall, she was quite well. (AR 700). Because the ALJ found that Dr. Hunt's opinion was inconsistent with his own treatment notes, the ALJ gave good reasons discounting his opinion. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-113 (6th Cir. 2010) ("[A] a treating physician's opinion is entitled to controlling weight only if it 'is not inconsistent with the other substantial evidence in the case record.'") (quoting 20 C.F.R. § 416.927(d)(2)).

B. *Mental Limitations*

Next, Western argues that the ALJ erred when considering the opinion of Dr. Harwell Smith, the consultative examining psychologist. The ALJ gave "great weight" to Dr. Smith's opinion. (AR 24). Western does not challenge the weight given to Dr. Smith's opinion. Instead, she claims that, in contravention of the weight assigned to his opinion, the ALJ ignored Dr. Smith's findings.

In discussing Western's functional capacity, Dr. Smith opined that Western's ability to concentrate was fair; her ability to interact social at work was fair to poor; and her ability to adapt and respond to the pressures of a work setting was fair to poor. (AR 589). With regard to mental limitations, the ALJ found that Western could perform simple routine tasks, maintain attention for two hours, adapt to gradual changes in a work routine, and interact frequently with coworkers and occasionally with the general public. (AR 21). These findings were not inconsistent given the range of "fair to poor" provided by Dr. Smith in her assessment. Moreover, the RFC determination was supported by other substantial evidence on the record. Most notably, Dr. Pena, the state agency psychologist, opined that Western did not have communicative limitations. (AR 132). The ALJ gave great weight to Dr. Pena's opinion. (AR 24).

7

Western also claims that the ALJ ignored the Global Assessment of Functioning ("GAF") score assigned by Dr. Smith and Dr. Jonathan Cole. Dr. Smith assigned a GAF score of 52 and Dr. Cole assigned a score of 50. (AR 588, 704). Failing to refer specifically to the GAF score does not mean that the ALJ did not consider it; the ALJ is not "required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-508 (6th Cir. 2006) (per curiam)). Here, the ALJ considered "all the evidence" and " the entire record" and discussed specifically both Dr. Smith and Dr. Cole's reports. (AR 24).[1] Furthermore, an ALJ is not required to put stock in a GAF score and failing to refer to GAF score does not make an RFC analysis unreliable. *Kornecky*, 167 F. App'x at 511 (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

C. Obesity

Western claims that the ALJ failed to incorporate her obesity into her RFC analysis. She contends that the ALJ's citation to Social Security Rule ("SSR") 02-1P, 2002 WL 34686281, which discusses evaluation of obesity, was merely "lip service." (DE 10-1, at 7). This argument has no merit. The ALJ identified obesity as a severe impairment and discussed how it can cause limitations of exertional, postural, and manipulative functions. (AR 20). When assessing Western's RFC, the ALJ explicitly considered Western's body mass index. (AR 22). The ALJ also found that Western was able to perform numerous activities associated with normal daily living. (AR 23). Accordingly, the ALJ properly considered additional effects of Western's obesity in assessing her RFC as required by SSR 02-1P. *See Nejat v. Comm'r of*

---

[1] Western also contends that the severity of the GAF scores were confirmed by Karen Zamora. While the ALJ considered Zamora's report in assessing Western's RFC, Zamora is a social worker and therapist and therefore not an acceptable medical sourcee. *See* 20 C.F.R. § 416.902(a).

8

*Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("Social Security Ruling 02–01p does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.") (internal quotation marks omitted) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)).

*D. Special Duty*

Western's final argument is that the ALJ failed to fulfil her special, "heightened duty" to Western as an unrepresented claimant. She claims that her unrepresented status required the ALJ to more thoroughly review favorable evidence and ask favorable questions at the hearing. This argument is unavailing. The ALJ informed Western of her right to counsel, and offered to provide her with a list of organizations which might provide her free legal representation. Nonetheless, Western waived this right. (AR 70). Western cites *Lashley v. Sec'y of HHS*, 708 F.2d 1048 (6th Cir. 1983), in support of her claim that a special duty applied. But *Lashley* applies only to the special circumstances were a claimant "is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures . . . ." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008). Western has not identified any facts which tend to show she was incapable of presenting an effective case or that she was unfamiliar with hearing procedures. To the contrary, Western's case was being reheard for a second time and therefore she was likely to be more familiar with hearing procedures than a typical applicant. Accordingly, Western has failed to show that the ALJ had any heightened duty to her as an unrepresented claimant.

## V. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. Plaintiff's motion for summary judgment (DE 10) is **DENIED**;

2. the Commissioner's motion for summary judgment (DE 12) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 30, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY